UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONTE O. LAVINGTON,

       Petitioner,                    Civil No. 2:21-CV-11774
                                     HONORABLE SEAN F. COX
v.                                  CHIEF UNITED STATES DISTRICT JUDGE

BECKY CARL,

       Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

       Dionte O. Lavington, ("petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws, § 750.316(1)(a); felon in possession of a firearm, Mich. Comp. Laws, § 750.224f; and possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Laws, § 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I.  Background

       Petitioner was convicted following a bench trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of the death of the victim, CL, on July 19, 2017, in Detroit, Michigan. Several witnesses testified that they saw defendant and CL together at the location where CL was shot. They either saw defendant shoot CL; or they heard gunshots, following which CL was found to have been shot. The witnesses provided somewhat differing accounts, such as what other individuals, if any, were present at the scene, and minor differences in defendant's attire. Defendant

1

testified that he was not present at the shooting, and instead he was seated on the porch of a house at least a block away with "Connie," "Anthony," and "KB." None of those three individuals were further identified, although Connie and KB were apparently also known to some of the other witnesses.

AI testified that he was a friend of CL, and his testimony implied that he was familiar with defendant. He and CL met with defendant to purchase marijuana from defendant. Defendant and CL got into an argument regarding a small amount of money that CL owed defendant. The argument seemed to escalate and deescalate, sometimes appearing "heated" and sometimes not. Defendant appeared drunk and high on drugs, and he spoke to CL in an aggressive manner. AI left defendant and CL to go to a gas station and heard gunshots. When AI returned, defendant was gone and CL was lying on the ground, having been shot several times. AI believed defendant had "probably" been wearing a white t-shirt, black pants, and a black baseball hat. AI testified that he observed "a couple people in the area" after CL was shot, but nobody with whom he was familiar.

DB testified that he knew defendant and KB, but at the time of the shooting, he did not know who CL was. DB was driving down the street when he saw the person he later learned was CL standing alone. He then also saw defendant and KB approaching. Defendant flagged DB down, and DB stopped. Defendant then approached CL, and DB saw defendant standing less than a foot away from CL. DB heard several gunshots and drove away. DB did not observe defendant actually in possession of a gun. DB believed that defendant was wearing black pants, a black shirt or hoody, and a black baseball hat. Approximately 45 minutes later, he encountered defendant while walking, and defendant instructed DB to tell anyone who asked for "his alibi" that defendant had been at Connie's house all night.

MD testified that he knew both defendant and CL. On the night of the shooting, MD and two friends were sitting on a car in the vicinity of the shooting. MD testified that CL was behind them, and MD believed CL was "hustling." He observed defendant "and a few other guys," one of whom was KB, approach CL. MD initially believed they were "just talking," until defendant told MD and his friends to leave. As they complied, MD observed defendant produce a pistol and start shooting at CL. MD recalled defendant wearing all black, other than red shoes with gray soles.

Defendant testified that he had been with Connie, KB, and Anthony on a porch elsewhere. He testified that he heard gunshots, but he did not see the shooting. CL's death was ruled a homicide, caused by six gunshot wounds. The gun was recovered from a large community dumpster behind Connie's house, inside a grocery bag also containing "gym shoes and some bullets." The gun was tested for DNA. No usable DNA could be extracted from the trigger, but three DNA profiles were found on the grip, one of which was a match to defendant. Both DB and MD testified that they had seen defendant shooting a gun in the air earlier in

2

the day, which they regarded as not unusual behavior for defendant. The parties
stipulated that defendant was ineligible to possess a gun at the time of the
shooting due to a prior felony conviction. The trial court found defendant guilty
as noted above.

*People v. Lavington*, No. 344225, 2020 WL 908468, at * 1–2 (Mich. Ct. App. Feb. 25, 2020), *lv.*

*den.*, 507 Mich. 898, 956 N.W.2d 185 (2021)(internal footnote omitted).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant was deprived of due process and the right of compulsory process
when the prosecution failed to notify the defense and obtain the presence of the
*res gestae* witness who was nearby during the incident, and trial counsel was
ineffective in failing to investigate and produce the witness.

II. Defendant Dionte Lavington's conviction for first degree murder, felon in
possession of a firearm, and felony firearm should be vacated where the
prosecution failed to meet its burden of proof resulting in insufficient evidence
regarding the elements of the crimes.

III. Defendant's convictions should be vacated because there was legally
insufficient evidence of premeditation to support a guilty finding.

IV. Defendant was denied a fair trial and his constitutional right to present a
defense because trial counsel was ineffective when he failed to present a
consistent defense, failed to prepare Lavington for his testimony, failed to call his
witnesses and by failing to conduct basic pre-trial investigation, all of which
caused a failure to present an adequate defense.

V. Defendant is entitled to a remand for a *Ginther* hearing to address the
ineffective assistance of counsel because the development of a factual record is
required for appellate consideration.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim–

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. Discussion

#### A. Claim # 1. The *res gestae* witness claim.

Petitioner first claims that his due process rights were violated when the prosecutor failed to produce at trial a *res gestae* witness known only as "KB." Petitioner argues that the

prosecutor failed to exercise due diligence in locating this witness to make him available at trial to testify.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler*, 419 F. App'x. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 (6th Cir. Aug. 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F. App'x. at 559.

Petitioner is correct that a prosecutor has a duty to disclose exculpatory evidence to the defense. To prevail on such a claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue

must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Likewise, to establish a violation of the Sixth Amendment constitutional right to compulsory process, a defendant must make a plausible showing of how the witness' testimony would have been both material and favorable to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  A defendant is required to make the same showing for a Fifth Amendment due process violation. *Id.* at 873.

Petitioner failed to show that KB would have offered exculpatory or helpful evidence. The prosecutor's failure to produce KB at trial did not deprive petitioner of his right to present a defense or to compulsory process.  Petitioner is not entitled to relief on his first claim.

**B.  Claims # 2 and # 3.  The sufficiency of evidence claims.**

Petitioner next claims that there was insufficient evidence to convict.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

6

beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  The *Jackson* standard applies to bench trials, as well as to jury trials. *See, e.g., U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003); *see also United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020)(in a bench trial, credibility of witnesses is a question for trial judge).

Petitioner in his second claim appears to argue that there was insufficient evidence to establish his identity as the shooter.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

MD testified at trial that he witnessed petitioner shoot the victim. The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted).  This witness unequivocally identified petitioner at trial as being the shooter based on his personal observations.  This evidence was sufficient to support petitioner's conviction. *See Thomas v. Perry,* 553 F. App'x. 485, 487–88 (6th Cir. 2014).

Another witness, DB, testified that petitioner approached the victim, and was standing less than a foot away from the victim.  DB heard several gunshots and drove away.  Although DB did not actually see petitioner discharge a firearm, the judge sitting as the trier of fact could infer from DB's testimony that petitioner was the person who shot the victim.

 In addition to the positive eyewitness identifications, there was circumstantial evidence to establish petitioner's identity as the shooter.  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Evidence at trial established an ongoing dispute between the victim and petitioner over money.  Petitioner's prior argument or dispute with the victim is circumstantial evidence that establishes petitioner's identity as the murderer. *See, e.g., Moreland v. Bradshaw*, 699 F.3d 908, 917 (6th Cir. 2012).

Petitioner's DNA was recovered from the grip of the murder weapon.  This is additional evidence that establishes petitioner's identity as the shooter. *See, e.g., U.S. v. Seawood,* 172 F. 3d 986, 988 (7th Cir. 1999); *Kelley v. Jackson,* 353 F. Supp. 2d 887, 892 (E.D. Mich. 2005).

DB testified that petitioner asked him to provide an alibi for petitioner for that evening. An attempt to procure perjured testimony to manufacture a false alibi defense can be considered as evidence of guilt as to the crime charged under both Michigan and federal law. *See People v. Ranes,* 58 Mich. App. 268, 271-72; 227 N.W. 2d 312 (1975); *see also Newman v. Metrish,* 492 F. Supp. 2d 721, 731 (E.D. Mich. 2007); *aff'd* 543 F. 3d 793 (6th Cir. 2008)(internal citation omitted).

Because there were multiple pieces of evidence, including eyewitness testimony, to establish petitioner's identity as the shooter, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F. 3d at 919-21.

Petitioner further claims that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder.

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992).  The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 596 (citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)).  Premeditation may be established through evidence of the following factors:

    1. the prior relationship of the parties;
    2. the defendant's actions before the killing;

     3. the circumstances of the killing itself;
     4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

     Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).  "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

     The Michigan Court of Appeals rejected petitioner's claim:

> There was also sufficient evidence that defendant killed CL with premeditation and deliberation. One eyewitness described CL and defendant "feuding" about money defendant owed CL. According to AI, defendant was speaking to CL in an aggressive manner, and the conversation seemed to escalate and deescalate before CL was shot. The fact that defendant instructed one eyewitness to leave before apparently directly approaching CL and shooting him strongly suggests that defendant had formed the intent to kill CL with ample time in which to take a

"second look." A reasonable trier of fact could find beyond a reasonable doubt that defendant intentionally killed CL with deliberation and premeditation.

*People v. Lavington*, 2020 WL 908468, at * 4.

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. Evidence that petitioner had a prior dispute with the victim over money the night of the shooting supports a reasonable inference that the subsequent shooting was premeditated. *Scott v. Elo,* 302 F. 3d at 603.  The victim was shot six times.  The fact that petitioner fired multiple gunshots would be sufficient to establish premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x. 403, 407 (6th Cir. 2014).  The fact that petitioner asked an eyewitness to leave the scene prior to shooting the victim is further evidence that the shooting was premeditated. *See e.g. Johnson v. Hofbauer,* 159 F. Supp. 2d at 597 (premeditation shown in part by fact that the petitioner ordered a witness twice to get out of the way before he shot the victim).

A federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims.  This Court cannot say that the Michigan Court of Appeals' rejection of petitioner's insufficiency of evidence claim resulted in a decision that was contrary to, or involved an unreasonable application of *Jackson*. *Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007).  "While there may have been other possible conclusions that the [judge] could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a [judge] to find that the evidence eliminates every other reasonable theory except that presented by the prosecution." *Titus v. Jackson*, 452 F. App'x. 647, 650 (6th Cir. 2011). Petitioner is not entitled to relief on his second and third claims.

**Claims # # 1, 4, 5. The ineffective assistance of counsel claims.**

Petitioner in his first and fourth claims argues he was denied the effective assistance of trial counsel.  Petitioner argues in his fifth claim that the state courts erred in denying his ineffective assistance of trial counsel claims by failing to conduct an evidentiary hearing on his ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211(C)(1).

Taking petitioner's evidentiary-hearing claim first, the Court does not have the power to grant habeas relief on petitioner's claim that the Michigan Court of Appeals improperly denied his motion to remand for an evidentiary hearing pursuant to M.C.R. 7.211.  There is no federal constitutional right to appeal a state court conviction. *Cleaver v. Bordenkircher*, 634 F. 2d 1010, 1011 (6th Cir. 1980).  Where a habeas petitioner alleges a denial of his right to appeal a state criminal conviction, he is not entitled to federal habeas relief. *Tate v. Livesay*, 612 F. Supp. 412, 413 (M.D. Tenn. 1984).  In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. at 67-68.  Whether the Michigan Court of Appeals erred in its application of M.C.R. 7.211 in denying petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 F. App'x. 577, 584 (6th Cir. 2006).  Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* at 585. Accordingly, petitioner would not be entitled to habeas relief on his fifth claim.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must

demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

As part of his first claim, petitioner argues that trial counsel was ineffective for failing to object to the prosecution's failure to produce KB for trial or to inform the defense that KB was a *res gestae* witness.  The Michigan Court of Appeals rejected this claim because petitioner failed to show that KB's testimony would have affected the outcome of the proceedings. *People v. Lavington*, 2020 WL 908468, at * 6.

Petitioner failed to show that KB would have offered favorable testimony to the defense, therefore, counsel was not ineffective for failing to seek the production of this witness or for failing to demand a due diligence hearing. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006).  Petitioner is not entitled to relief on this portion of his first claim.

In his fourth claim, petitioner first argues that trial counsel was ineffective for failing to prepare and argue a consistent defense.  Petitioner notes that counsel in his opening argument informed the judge that he would be raising a self-defense claim but then at trial presented an alibi defense.

The Michigan Court of Appeals rejected the claim:

Defendant argues that trial counsel was ineffective for failing to prepare a consistent defense. Specifically, defendant contends that trial counsel failed to properly prepare a defense strategy or prepare defendant for trial, and as a result, defendant and trial counsel presented inconsistent defenses. We disagree.

Defendant accurately points out that defense counsel informed the trial court during opening statements that defendant would testify that he acted in self-defense and disposed of the gun because he was aware that he was not legally allowed to have a gun. Defendant did in fact testify as the final witness at trial. Contrary to the opening statement, defendant testified that he was not present at the scene, but instead, he was at his home with KB, Connie, and his neighbor Anthony. Defendant contends that he heard the gunshots, but he is unaware of what occurred.

We find nothing in the record to suggest that an alibi defense was ever contemplated by defendant or his attorney prior to defendant taking the stand. In contrast, in light of the evidence, a self-defense theory was highly reasonable. There was overwhelming evidence that defendant shot CL—however, as defense counsel pointed out, there was little, if any, explanation of why defendant shot CL. Furthermore, two telephone calls defendant made from jail were admitted, and although we have not been provided with their contents, defendant apparently discussed in one of them having acted in self-defense. Finally, it would have been a fair extrapolation from the evidence that the argument between defendant and CL was mutual and had the potential to become mutually violent. A self-defense theory was reasonable, and, if believed, it could have at least resulted in an acquittal of first-degree murder.

Defendant's testimony that he was not present at the scene, in complete conflict with the other witnesses' testimony, is therefore curious. We agree with the prosecutor that the only likely explanation is that defendant made a last-moment decision to testify that he was not present, contrary to what counsel obviously believed would occur. The record clearly shows that counsel did prepare a reasonable defense strategy, and it strongly implies that defendant was aware of that strategy at the beginning of the trial. We cannot fault counsel for defendant choosing to go off-script. In any event, given the overwhelming evidence that defendant shot CL, we find no reason to believe the outcome of the trial might

have changed if counsel had pursued a theory that defendant was not present during the shooting.

*People v. Lavington*, 2020 WL 908468, at * 5.

A defense counsel's failure to fulfil an important promise in an opening statement may sometimes amount to deficient performance. *See English v. Romanowski*, 602 F.3d 714, 729 (6th Cir. 2010). However, "[a]n attorney's failure to fulfill promises made in opening statement is not often a successful basis for an ineffective assistance claim." *Hampton v. Leibach*, 290 F. Supp. 2d 905, 928 (N.D. Ill. 2001), *aff'd*, 347 F.3d 219 (7th Cir. 2003). This is because "[t]he decision to change strategy during trial is often forced upon defense counsel by the vagaries of the courtroom arena." *Id.*, 290 F. Supp. 2d at 928. A defense attorney's decision to abandon a defense raised in his or her opening statement is not ineffective assistance if the evidence presented at trial no longer supports such a defense. *See, e.g., King v. Westbrooks*, 847 F.3d 788, 796-97 (6th Cir. 2017). Counsel was not ineffective for abandoning a self-defense claim when petitioner took the stand and denied shooting the victim or even being present at the time that the victim was murdered. *See Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir. 1981)(counsel was not ineffective for failure to pursue intoxication defense where the defendant precipitated the abandonment of such defense when he testified on cross-examination that he was fully conscious of his activities on night of murder and counsel's only asserted alternative strategy would have been to pursue an arguable alibi defense).

Petitioner next claims that counsel was ineffective for failing to call several witnesses to corroborate his defense.

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect, and this

presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). Petitioner presented no evidence to the Michigan courts to rebut the presumption that trial counsel's decision to forego calling these witnesses or presenting this evidence was tactical.

Petitioner is also not entitled to relief on his claim because he failed to provide to the Michigan courts or to this Court affidavits from any of his proposed witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner failed to present any evidence to the state courts in support of his ineffective assistance of counsel claim and is thus not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). In failing to attach any offer of proof or any affidavits sworn by the proposed witnesses, petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have testified and what the content of these witnesses' testimony would have been. Without such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Therefore, *Cullen* would preclude the Court from considering any new evidence that petitioner would even want to present at this point in support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).  Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling these witnesses or presenting this evidence was strategic or that the outcome of the trial would have been different had these witnesses been called or the evidence presented. Petitioner is not entitled to habeas relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

## V.  ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be denied leave to appeal *in forma pauperis*.

s/Sean F. Cox
SEAN F. COX
Dated: June 16, 2022                    UNITED STATES DISTRICT JUDGE